IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BRANNON FINNEY,

          Plaintiff,

    v.

BRYAN R. HOWEY, and his marital community,

          Defendant.

Case No. 3:20-cv-00289-SLG-KFR

**REPORT AND RECOMMENDATION TO DENY MOTION TO VACATE JUDGMENT**

The Court recommends denial of Defendant's Motion to Vacate Judgment under Rule 60(b)(4) at Docket 17. The Court finds that Plaintiff pled a cognizable claim in admiralty and that federal jurisdiction over the matter was proper. Federal admiralty jurisdiction exists because the contract at issue was sufficiently maritime in character and nature, and Defendant has not met his burden to prove otherwise.

**I.    Background**

On November 16, 2020, Plaintiff, Brannon Finney, filed a Complaint in admiralty against Defendant, Bryan R. Howey, and his marital community, seeking damages for breach of contract.[1] Plaintiff asserted subject matter jurisdiction under 28 U.S.C. § 1333, Admiralty, maritime, and prize cases; and 28 U.S.C. §1331, Federal question, specifically 46 U.S.C. § 31343, Recording and discharging notice of claim of maritime lien.[2] Plaintiff further asserted the claim was an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h), that the Court had personal jurisdiction over the Defendant, and that venue was proper.[3]

//

---

[1] Doc. 1.
[2] *Id*.
[3] *Id*.

Specifically, the breach of contract claim related to a written Seine Permit Contract permitting Defendant to use Plaintiff's Southeast Alaska Salmon Seine permit for the 2015 Southeast Alaska Salmon Seine Season (hereinafter "2015 Permit").[4] The contract for the 2015 Permit, signed by both parties, named Defendant as "skipper of the Pacific Predator ADFG."[5]

Defendant was properly served the Complaint on December 4, 2020.[6] After Defendant failed to answer, Plaintiff filed a Motion for Entry of Default on December 29, 2020.[7] A Clerk's Entry of Default issued, followed by Plaintiff's Motion for Default Judgment and supporting documents.[8] On March 9, 2021, the Court granted Plaintiff's Motion for Default Judgment in the amount of $25,287.75, plus post judgment interest pursuant to 28 U.S.C. § 1961.[9] Plaintiff subsequently filed an Application for Writ of Execution.[10]

Eighteen months and two weeks later, Defendant appeared for the first time in the case seeking to vacate the judgment under Fed. R. Civ. P. 60(b)(4) for lack of subject matter jurisdiction.[11] Defendant's motion - without providing any explanation for his failure to answer or otherwise appear in the case - makes both a facial and factual challenge to the Court's jurisdiction over this matter, arguing that there is neither federal question nor admiralty jurisdiction. As to the facial challenge, Defendant summarily argues that Plaintiff's Complaint "fails on its face

---

[4] Seine fishing involves encircling a school of fish with a vertically hanging that is held down by weights and buoyed by floats. *See* https://en.Wikipedia.org/wiki/Seine_fishing. In Southeast Alaska, commercial salmon fishing using purse seines and other techniques is regulated by state and federal officials. *See e.g.,* https://www.adfg.alaska.gov/index.cfm?adfg=commericalbyareassoutheast.main.
[5] Doc. 1-1; The Pacific Predator is a 58-foot welded aluminum seiner/tender built in 1987 (*See Kanaway Seafoods, Inc. et al., v. Pacific Predator, et al.* 3:22-cv-00027-JKM-KFR, Doc. 36-1 at 3).
[6] Doc. 4.
[7] Doc. 5.
[8] Docs. 7-11.
[9] Docs. 12-13.
[10] Doc. 14.
[11] Doc. 17.

to support federal court admiralty jurisdiction."[12]

Defendant also contends that the Complaint contains insufficient facts to support federal admiralty jurisdiction. Defendant argues that 46 U.S.C. § 31343 "authorizes and establishes the requirements for recording a Notice of Claim or Lien with the United States Coast Guard National Vessel Documentation Center (NVDC)," and is not a basis for admiralty jurisdiction.[13] Defendant also argues that there is no admiralty jurisdiction in this case because "the purchase of the right to be a transferee of [the 2015 Permit,] a State created and controlled temporary use permit is not a maritime contract, particularly given the absolute control the State of Alaska maintains over the use and transfer of the right."[14] Defendant further states that a motion to void a judgment for lack of subject matter jurisdiction may be brought at any time.[15]

In response, Plaintiff concedes that her Complaint mistakenly included reference to 46 U.S.C. § 31343 and that it is in fact not applicable to this case.[16] However, Plaintiff argues that this mistake is irrelevant as the application of 46 U.S.C. § 31343 is not necessary to confer federal jurisdiction over this matter since the contract at issue is a maritime contract and therefore within the scope of 28 U.S.C. § 1333.[17]

//
//
//
//
//
//

---

[12] *Id.* at 7.
[13] Id. at 10.
[14] *Id.* at 20.
[15] *Id.* at 6.
[16] Doc. 19 at 10, FN 13.
[17] *Id.*

Report and Recommendation 3
*Finney v. Howey*
3:20-cv-00289-SLG-KFR

## II. Legal Standard

A district court may set aside a default judgment "in accordance with" Fed. R. Civ. P. 60(b)(4), which provides that a Court may relieve a party from a final judgment if the judgment is void.[18] A final judgment is void "only if the court that considered it lacked jurisdiction ... over the parties to be bound."[19] "The list of such [set aside] judgments is exceedingly short, and Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."[20] "Federal courts considering [whether] a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction."[21]

The standard for determining whether a plaintiff has asserted a valid admiralty claim is the "prima facie standard," rather than the more demanding "fair probability" or "reasonable grounds" standards.[22] The "inquiry focuses on whether the plaintiff has [pled] a claim cognizable in admiralty."[23]

It is well settled that the plaintiff bears the initial in burden of pleading in her complaint the appropriate jurisdictional facts to establish both the court's jurisdiction over the subject matter of the action and over the parties to the action,

---

[18] Fed. R. Civ. P. 55(c).
[19] *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999).
[20] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citing for comparison *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) and *Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938)).
[21] *Espinosa*, 559 U.S. at 270; *see, e.g., Reardon v. Reardon*, 421 Fed. Appx. 141, 142 (3d Cir. 2011) ("Reardon alleges that the District Court erred in applying the doctrine of absolute immunity ..., but this is an allegation of legal error only; it is not an allegation that the federal court lacked jurisdiction over his section 1983 action such that the judgment rendered is void.") (n.1 omitted).
[22] *Padre Shipping, Inc. v. Yong He Shipping,* 553 F.Supp.2d 328, 331-32 (S.D.N.Y. 2008).
[23] *Ronda Ship Mgmt. v. Doha Asian Games Org. Comm.,* 511 F.Supp.2d 399, 404 (S.D.N.Y. 2007).

including proper service of process.[24] However, if a party who has been served in the underlying action permits the entry of a default judgment, the burden of proof in a later Rule 60(b)(4) motion rests with the defaulted party.[25] "Motions to set aside a judgment as void under Rule 60(b)(4) may be brought at any time."[26]

### III. Maritime Jurisdiction Stemming from Maritime Contract

Federal courts may exercise their maritime jurisdiction granted by 28 U.S.C. § 1333 if an action is based on a maritime contract.[27] When a contract is maritime, and the dispute is not inherently local, federal law controls the contract interpretation.[28] There are few "clean lines between maritime and non-maritime contracts."[29] The true criterion of exercising jurisdiction over a maritime contract is whether the contract's nature and character make reference to maritime services or maritime transactions.[30]

The examination of the maritime character of a contract is "conceptual rather than spatial, and defined by the purpose of the jurisdictional grant - to protect

---

[24] 102 A.L.R. Fed. 811 (Originally published in 1991).

[25] *See Burda Media Inc. v. Viertel*, 417 F.3d 292, 298 (2nd Cir.2005) (holding on a motion to vacate a default judgment when the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, defendant bears the burden of proof); *see also Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir.1986) (when defendant ignored process and challenged default judgment on a Rule 60(b)(4) motion, defendant bears the burden of proving an absence of personal jurisdiction); *CSC Holdings, Inc. v. Fung*, 349 F.Supp.2d 613, 616 (E.D.N.Y.2004) ("[a] defendant with notice of the proceedings bears the burden of establishing the claim that service was not properly effected").

[26] *Million (Far East), Ltd. v. Lincoln Provisions, Inc. USA*, 581 Fed. Appx. 679, 682 (9th Cir. 2014) (citing *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)); *see also Lee v. AFT–Yakima*, 2011 WL 4703106, *2 (E.D. Wash. Oct. 4, 2011) ("[M]otions for relief from judgment on the basis that the judgment was void are not subject to the one-year limitation period in Rule 60(c)(1)."); *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990) (because "[a] void judgment is from its inception a legal nullity," "relief from a void judgment has no time limitations").

[27] *See Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 23 (2004) (a federal action can "be sustained under the admiralty jurisdiction by virtue of the maritime contracts involved.").

[28] *Kossick v. United Fruit Co.,* 365 U.S. 731, 735 (1961).

[29] *Id.*

[30] *Kirby,* 543 U.S. at 24.

maritime commerce."[31] The "fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce."[32] As such, "[a] contract that relates to a ship, to commerce or navigation on navigable waters, or to maritime employment is a maritime contract."[33]

"The contract's subject matter must be [the] focal point."[34] Accordingly, courts may not examine potential maritime contracts by "depend[ing] solely on geography."[35] A dispute will not give rise to maritime jurisdiction if "the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction."[36]

In this case, there are multiple bases upon which to conclude that the 2015 Permit involves a maritime contract and that this matter was properly brought by Plaintiff's in admiralty. Defendant does not dispute that there was a contract in this case,[37] only whether it is a maritime contract.[38] Moreover, the Court finds that there can also be no reasonable dispute that the contract relates to maritime commerce.

"Maritime" means of, relating to, or bordering on the sea; of, or relating to, navigation or commerce on the sea[39]; and "commerce" is the exchanging, buying, or selling of things having economic value between two or more entities, for example goods, services, and money.[40] The 2015 Permit in this case gave Defendant the right

---

[31] *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.,* 413 F.3d 307, 311 (2d Cir.2005) (citations omitted); 28 U.S.C.A. § 1333(1).
[32] *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991) (emphasis added).
[33] *Brusco Tug & Barge, Inc. v. St. Paul Fire and Marine Ins. Co.*, 897 F.Supp.2d 1048, 1052 (W.D. Wash., 2012); *see also Sundance Cruises Corp. v. American Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir. 1993).
[34] *Id.* at 312.
[35] *Kirby,* 543 U.S. at 27.
[36] *Id.; see also Union Fish Co. v. Kirby*, 248 U.S. 308, 312 (1912).
[37] Doc. 17 at 3.
[38] *Id.* at 19.
[39] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/maritime#:~:text=1%20%3A%20of%2C%20relating%20to%2C,the%20characteristics%20of%20a%20mariner.
[40] 15 U.S.C. §1127.

to seine for salmon in Alaskan and federal waters in Southeast Alaska during a specified period of time and to sell his catch for profit.[41] This activity is both occurring on the sea and something "having economic value." As such, it undeniably involved "maritime commerce."

The contract resembles the character and nature of the maritime contract in *Union Fish Co. v. Erikson*.[42] In *Erikson*, the parties contracted for the services of the master (skipper)[43] of a vessel, whose duties were to be performed in the waters of Alaska, mainly upon the sea.[44] The Court held that maritime law controlled that contract.

The same analysis applies in this case. Defendant, the skipper of a vessel, contracted with Plaintiff for a permit to be able to perform maritime services - commercial fishing for salmon - in Alaskan and federal waters. The "maritime character" of the contract for the 2015 Permit is readily apparent.

Additional factors support the Court's finding that this contract involves maritime commerce and that therefore admiralty jurisdiction was proper. First and foremost, Defendant's own pleading makes multiple references to the commercial nature of this contract.[45] In addition, the contract relates to participation in the 2015 salmon fishing season, an activity is regulated and limited to commercial fishermen who are designated by the Alaska Commercial Fisheries Entry Commission.[46]

//

---

[41] Doc. 1-1.
[42] Union *Erikson*, 248 U.S. at 308.
[43] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/skipper.
[44] *Id.*
[45] *Id.* at 3, 14, 16. For instance at page 14 of his motion, Defendant writes "[i]n 1973, *commercial* fisherman with the appropriate "gear license" and requisite amount of time in the fishery were granted permits to continue to *fish commercially* in that fishery with that gear. *See, Suydam v. Alaska Commercial Fisheries Entry Commission*, 957 P.2d 318, 219 (1988)" (emphasis added).
[46] National Oceanic and Atmospheric Administration Fisheries, Funding and Financial Services, "Southeast Alaska Purse Seine Salmon Fishery Buyback Program," https://www.fisheries.noaa.gov/alaska/funding-and-financial-services/southeast-alaska-purse-seine-salmon-fishery-buyback-program.

Finally, the 2015 Permit is informed by the Limited Entry Act (LEA), which was enacted in 1973 after a rising crisis brought on by poor salmon returns, declining fishing incomes, and a rising number of nonresident fishermen.[47] Alaska's LEA was developed to "keep fishing rights in the hands of Alaskans dependent on fisheries, especially rural residents with limited economic opportunity."[48] The LEA was designed to "promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of *commercial* fishing in Alaska by regulating and controlling entry of participants and vessels into the *commercial* fisheries in the public interest and without unjust discrimination."[49] The permit's, and thus the contract's, primary objective relates to commercial fishing activities and clearly falls within the scope of a maritime contract.

The Court does not factor in the use of a vessel in its evaluation of whether the 2015 Permit contract constituted a maritime contract because it is aware of the possibility that such a permit may be utilized without a vessel. Rather the commercial nature of the subject matter of the contract, and the commercial fishing services performed under the contract, are themselves maritime in nature.[50] Even without use of a vessel, the contract relates to commerce or navigation on navigable waters, and the purpose of the 2015 Permit is to promote and protect maritime commerce, the very definition of a maritime contract.[51]

//

//

---

[47] Frank Homan, "30 Years of Limited Entry," chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://seagrant.uaf.edu/events/fish-com2/ppts/homan-limitedentry.pdf; "A Bristol Bay Fisheries Policy Retrospective," The Nature Conservancy, September 11, 2021, https://www.nature.org/en-us/newsroom/alaska-bristol-bay fisheries-righting-the-hip/#:~:text=A%20key%20objective%20of%20Alaska's,residents%20with%20limited%20economic%20opportunity.

[48] *Id.*

[49] Doc. 17 at 14 (emphasis added).

[50] 28 U.S.C.A. § 1333(1); *Kirby,* 543 U.S. at 27.

[51] *St. Paul Fire,* 897 F.Supp.2d 1052; *see also American Bureau of Shipping,* 7 F.3d 1080.

## IV. Conclusion

The Complaint involved a dispute over a maritime contract affecting maritime commerce. Accordingly, the Court finds that Plaintiff properly pled a cognizable claim in admiralty and that Defendant has not met his burden in proving otherwise. The Court recommends that Defendant's Motion to Vacate Judgment under Rule 60(b)(4) be **DENIED**.

DATED this 14th day of November, 2022 at Anchorage, Alaska.

*s/ Kyle F. Reardon*
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

**NOTICE OF RIGHT TO OBJECT**

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[52] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[53]

A party may file written objections to the magistrate judge's order within 14 fourteen days.[54] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[55]

---

[52] 28 U.S.C. § 636(b)(1)(B).
[53] 28 U.S.C. § 636(b)(1)(C).
[54] *Id.*
[55] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).